OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, State Farm Mutual Automobile Insurance Company, appeals the decision of the Mahoning County Court of Common Pleas which granted summary judgment in favor of Plaintiff-Appellee, Celso and Puring Bautista. The issue we must resolve is whether the trial court erred in finding that, according to Virginia law, State Farm's insured, Helen Kolis, was an underinsured motorist. We conclude that under Virginia law, the Baustistas' policy clearly and unambiguously prevents the stacking of UM/UIM coverages on multiple vehicles contained within their single insurance policy and, therefore, Kolis was not an underinsured motorist. Thus, the trial court's decision is reversed and judgment is granted to State Farm.
 {¶ 2} On June 20, 1995, Celso was operating a motor vehicle on State Route 165 in Beaver Township, Mahoning County, Ohio. Another vehicle operated by Helen L. Kolis collided with Bautista's vehicle causing physical injury and other damages. At the time of the accident, Kolis was an Ohio resident. She carried an automobile insurance policy with Motorists Mutual Insurance Company which was issued in Ohio with a liability limit of $50,000 per person/$100,000.00 per accident. Celso, a Virginia resident, carried an automobile insurance policy issued by State Farm. That policy was issued in Virginia and covered four vehicles, each of which was registered and principally garaged in Virginia. That policy had an UM/UIM coverage limit of $50,000 per person/$100,000.00 per accident. Separate and unequal premiums were charged for each vehicle's UM/UIM coverage.
 {¶ 3} The Bautistas, along with other passengers injured in the accident, filed a lawsuit against Kolis and State Farm. Subsequently, those plaintiffs settled their claims against Kolis through her insurer, Motorists. Specifically, the Bautistas settled their claim for $50,000. Subsequently, the Bautistas and State Farm filed cross-motions for summary judgment. State Farm argued Ohio law did not permit the stacking of UM/UIM coverage. The Bautistas argued their policy with State Farm was governed by Virginia law which permits the stacking of UM/UIM coverage. The trial court sustained the Bautista's partial summary judgment motion and overruled State Farm's motion. The court later filed an additional judgment entry clarifying its previous judgment. State Farm timely appealed each of these judgment entries. Those appeals were consolidated and this court dismissed the appeals for lack of a final, appealable order as the trial court's entry only addressed the issue regarding State Farm's liability, and left for later determination other issues, including damages. Bautista v. Kolis (Apr. 26, 2001), 7th Dist. Nos. 99 C.A. 99, 99 C.A. 218. On remand, the parties entered into a stipulation on damages and the trial court entered judgment, determining no additional issues remained pending for resolution. It is from this judgment that State Farm timely appeals.
 {¶ 4} We reverse the trial court's decision because the Bautistas' insurance policy contained plain, unmistakable language which prohibited the stacking of UM/UIM coverage on the multiple vehicles contained within their single policy. Under Virginia law, when a single insurance policy covers multiple vehicles, then the UM/UIM coverage provided in the policy is stacked for each vehicle found in the policy unless the policy contains plain, explicit, and unmistakable language prohibiting this form of stacking. This policy provided that the UM/UIM coverage it was providing was the same regardless of the number of motor vehicles which the policy covered. This language plainly prohibited stacking the UM/UIM coverage on each vehicle in the policy. Accordingly, Kolis was not underinsured.
 {¶ 5} State Farm's sole assignment of error asserts:
 {¶ 6} "The trial court erred in construing Virginia law to require separate limits of uninsured/underinsured motorist coverage for each vehicle in the household."
 {¶ 7} State Farm argues the trial court erred in granting summary judgment to the Bautistas and permitting them to stack the UM/UIM coverage on multiple vehicles in a single policy, thereby determining Kolis was an underinsured motorist. State Farm argues that Virginia law only allows insureds to stack UM/UIM for multiple vehicles covered by multiple policies, not UM/UIM coverage on multiple vehicles provided within a single policy. It also argues that even if the Bautistas are allowed to stack the UM/UIM coverage on multiple vehicles contained within a single policy, it is not permissible in this case as the policy clearly and unambiguously prohibits this type of stacking.
 {¶ 8} At one point, State Farm disputed whether Ohio or Virginia law applied in this case. However, on appeal the parties do not dispute the trial court's decision that Virginia law governs this court's determination as it is the state with the most contacts to the Bautistas' insurance contract. See Ohayon v. Safeco Ins. Co. of Illinois (2001),91 Ohio St.3d 474, 747 N.E.2d 206. Thus, we must interpret Virginia's uninsured motorists law.
 {¶ 9} When reviewing a trial court's granting of summary judgment, an appellate court applies the same standard used by the trial court. Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826, 829, 586 N.E.2d 1121. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v.Shaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
 {¶ 10} Virginia is similar to Ohio in that it requires UM/UIM coverage in all motor vehicle insurance policies, with certain limited exceptions. Va. Code 38.2-2206(A). Under Virginia law, a UM/UIM provision contained in a policy covering one car provides UM/UIM coverage to the named insured when that insured is operating or using any other vehicle. Id.; Lipscombe v. Sec. Ins. Co. (1972), 213 Va. 81, 83-84, 189 S.E.2d 320.
 {¶ 11} "A motor vehicle is `underinsured' when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle and available for payment for such bodily injury or property damage * * * is less than the total amount of uninsured motorists coverage afforded any person injured as a result of the operation or use of the motor vehicle." Va. Code38.2-2206(B).
 {¶ 12} "The clear and unambiguous language of Code 38.2-2206(B) requires that all the UM coverage available to [the insured] be aggregated, or stacked, before the total amount of this coverage is compared with the total amount of liability coverage available to [the uninsured or underinsured motorist]." USAA Cas. Ins. Co. v. Alexander
(1994), 248 Va. 185, 192, 445 S.E.2d 145; see also Lipscombe; Cuninghamv. Ins. Co. of N. Am. (1972), 213 Va. 72, 189 S.E.2d 832; Bryant v. StateFarm Mut. Ins. Co. (1965), 205 Va. 897, 140 S.E.2d 817.
 {¶ 13} The Virginia Supreme Court has long held that when a single automobile insurance policy covers multiple vehicles, then the UM/UIM coverage provided on each vehicle may be stacked to determine whether a motorist is underinsured. In Cunningham and Lipscombe, two cases decided on the same day, the insureds were covered by policies which afforded UM coverage on more than one automobile owned by the insured and charged separate and equal premiums for that coverage on each car. The court reasoned that an insured which was paying a double premium would expect double coverage and, thus, the UM coverages for the different automobiles found in the single policy should be stacked. Cunningham at 79.
 {¶ 14} In order to prevent this type of stacking, a policy must "plainly, explicitly and unmistakably" prohibit it. Id. Lipscombe provided an example of a case which did not successfully prohibit this type of stacking. The insurance company tried to prohibit stacking through the following limitation of liability: "[The] limit of liability * * * stated in the declarations as applicable to `each person' is the limit of the company's liability for all damages * * * sustained by one person as the result of any one accident." Id. at 82. The Virginia Supreme Court found this language ambiguous.
 {¶ 15} "Where, as here, two vehicles are insured in the same policy and the named insured is injured while operating one of those vehicles, it is clear that he is covered by the uninsured motorist provisions applicable to the occupied vehicle. But, is he not entitled to the coverage applicable to his other vehicle, upon which he has paid a full premium and as to which, at the time of his injury, he is in the `or otherwise' status? It is unclear from the policy whether he is so entitled, even with the `two or more automobiles' clause excluded. * * * Security's mere exclusion of the ambiguous clause did not inform Lipscombe that he was entitled to only one coverage regardless of what status he occupied when injured and regardless of the number of vehicles insured." Id. at 84.
 {¶ 16} Subsequently, the Virginia Supreme Court provided an example of a policy which successfully prohibited this type of stacking. In Goodville Mut. Cas. Co. v. Borror (1981), 221 Va. 967, 275 S.E.2d 625, the insured was killed in an automobile accident caused by an uninsured motorist. At the time of the accident the insured was covered by a single insurance policy covering two vehicles. Separate but unequal premiums were charged for each vehicle under the policy, but a separate premium was not allocated for UM coverage. The policy contained the following limitation of liability:
 {¶ 17} "Regardless of the number of motor vehicles to which this insurance applies,
 {¶ 18} "(a) the limit of liability for bodily injury stated in the schedule as applicable to `each person' is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting `each person', the limit of liability stated in the schedule as applicable to `each accident' is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident." Id. at 970.
 {¶ 19} The Borror court found this language, particularly the phrase "regardless of the number of motor vehicles to which this insurance applies", "is clear and unambiguous and requires the construction that stacking is not permissible." Id. at 971. Thus, the "regardless of the number of motor vehicles to which this insurance applies" language plainly, explicitly and unmistakably prohibits stacking of the UM/UIM coverages in a single policy as a matter of Virginia law.
 {¶ 20} The distinguishing characteristic between Lipscombe andBorror is the language at the beginning of the limitation of liability which was present in Borror and absent in Lipscombe. When a single policy covers multiple vehicles and does not contain that or similar language, then the policy is like that in Lipscombe and the UM/UIM coverages on each vehicle within the policy must be stacked. However, when the same kind of policy contains language similar to that in Borror, then that form of stacking is prohibited.
 {¶ 21} In this case, the Bautistas had a single automobile insurance policy covering multiple vehicles and separate but unequal premiums were charged for each vehicle. When describing the limits of its liability, State Farm included the following limitation:
 {¶ 22} "Regardless of the number of * * * motor vehicles to which this insurance applies,
 {¶ 23} "(a) if the schedule or declarations indicate split limits of liability, the limit of liability for bodily injury stated as applicable to `each person' is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting `each person', the limit of liability for bodily injury stated as applicable to `each accident', is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident."
 {¶ 24} This limitation is identical to that in Borror quoted at ¶ 16-18. It provides the same amount of UM/UIM coverage to the Bautistas regardless of the number of motor vehicles insured by the policy. As the Virginia Supreme Court held in Borror, this language clearly and unambiguously prohibits the stacking of the UM/UIM coverages available on the multiple vehicles contained within this single policy. In addition, like Borror, separate but unequal premiums were charged for each vehicle issued under the policy. Thus, the trial court erred when it allowed those coverages to be stacked. As the amount of Kolis' insurance is the same as the total amount of the Bautista's UM/UIM coverage, Kolis was not underinsured as defined by Virginia law. Accordingly, State Farm's assignment of error is meritorious. The trial court's decision is reversed and judgment is granted to State Farm.
Vukovich and Donofrio, JJ., concur.